Law Office of Eric Auten
Alaska Bar #9712098
PO Box 2717
Valdez, AK 99686
907-461-7240
auteneric@yahoo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| Joshua Tucker, )<br>v. )<br>City of Valdez, Alaska; )<br>Officer Jamesson Major and )<br>Valdez Chief of Police Bart Hinkle. )<br>_____ ) | Case # 3:22-cv-00065-JWS |

## COMPLAINT

1) Plaintiff Joshua Tucker is a natural person and at all relevant times has been and is a resident of Valdez, Third Judicial District, State of Alaska.

2) Defendant Officer Jamesson Major ("Officer Major") is a natural person and at all relevant times was a police officer for the Valdez Police Department and acting under color of state law. On information and belief, Officer Major no longer works for the Valdez Police Department and may currently work for the Municipality of Anchorage Police Department.

3) Defendant Valdez Chief of Police Bart Hinkle ("Chief Hinkle") is a natural person and at all relevant times was a police officer for the Valdez Police Department and acting under color of state law. Chief Hinkle was at all relevant times the top supervisor of Officer Major and other officers with the Valdez Police Department.

4) On information and belief, there may be other supervisory officers employed by the Valdez Police Department with supervisory authority over Officer Major. Their identities and duties may be ascertained through discovery in this action. Together

1

with Chief Hinkle, these individuals will be referred to herein as the "Supervisory Defendants."

5) The Supervisory Defendants and Officer Major will be referred to herein collectively as the "Individual Defendants."

6) Defendant City of Valdez ("City") is a home rule municipal corporation organized under Title 29 of the Alaska Statutes. At all relevant times, the City was the Individual Defendants' employer and was also acting under color of state law.

7) The City and the Individual Defendants will be referred to collectively herein as the "Defendants."

8) This is a claim for monetary damages under 42 U.S.C. § 1983 and under the statutes and common law of Alaska against the Defendants. Mr. Tucker's claims relate to the unlawful arrest and imprisonment and malicious prosecution arising from the events detailed herein.

9) The Individual Defendants knew or should have known that Mr. Tucker was not guilty of these charges, both as a legal and factual matter, yet wrongfully proceeded with charges based materially, if not entirely, on falsified statements attested to and/or suborned by the Individual Defendants.

10) The City of Valdez Police Department, under the leadership of Chief Hinkle, created and maintained internal policies, practices and customs that suborned and at times even encouraged these unconstitutional acts, as well as failing to properly train and supervise its officers regarding investigation and prosecution techniques. As a result of their deliberate indifference, Mr. Tucker's constitutional rights were violated.

//

## JURISDICTION AND VENUE:

11) This action arises under the United States Constitution, particularly under the provisions of the Fourth (unreasonable searches and seizures), Fifth (due process and right to fair grand jury proceeding) and Fourteenth Amendments (equal protection under the law and applying same to the states) to the United States Constitution, and under federal law, including the Civil Rights Act, Title 42 U.S.C. § 1983 and § 1985.

12) This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 over claims arising from 42 U.S.C. § 1983.

13) Supplemental jurisdiction over Mr. Tucker's pendent state law claims exists pursuant to 28 U.S.C. § 1367(a).

14) Venue is proper in Anchorage, Alaska pursuant to 28 U.S.C. § 1391(b)(1), as it is believed the Defendants reside and/or are incorporated there and in the Third Judicial District, State of Alaska.

15) In early October of 2019, Mr. Tucker was charged in case #3VA-19-102CR in the Superior Court in Valdez, Alaska with one count of misconduct involving a controlled substance in the third degree, a Class B felony. The case was among about eight other cases brought in Valdez around this time as part of an investigation into the sale and distribution of illegal and illicit drugs in the community.[1] On information and belief, Officer Major was either the lead investigator or had substantial involvement in at least five of these cases.

16) A grand jury was convened on October 10, 2019 in Palmer, Alaska. The sole witness at the proceeding was Officer Major.

---

[1] Robert Gillespie was charged in a separate case #3VA-19-103CR.

17) The grand jury transcript charged in Count 1 that "[I]n the Third Judicial District, State of Alaska, on or about June 5, 2019, at or near Valdez, Mr. Tucker and [Robert] Gillespie ["Mr. Gillespie"] as principals or accomplices knowingly delivered one or more preparations, compounds, mixtures or substances of an aggregate weight of less than 2.5 grams (specifically, 1.1 grams) containing a Schedule II or IIIA substance, namely methamphetamine.

18) The most relevant portion of Officer Major's sworn testimony follows:

District Attorney: So, in this case, April of 2019, you were working with a confidential informant.

Officer Major: That's correct.

District Attorney: And at some point in June that confidential informant had been contacted by Robert Gillespie indicating that he was willing to sell the confidential informant methamphetamine; is that correct?

Officer Major: Yes.

District Attorney: So, let's talk about June 6th – June 5th, 2019. Let's talk about that controlled buy that was conducted.

Officer Major: OK. On that day the confidential informant advised me that he had been in contact with Mr. Gillespie and that Mr. Gillespie was wanting to sell him some methamphetamine. We set up the buy. We met; we did our pre-buy search; pre-buy interview. We had given the confidential informant a total of $200.00 . . . pre-recorded . . . buy money. . . . We observed the CI approach the location where he was to meet Mr. Gilllespie. When . . . the CI was at that location, Mr. Gillespie was there, however, Mr. Gillespie being a carpenter/handyman, was on the roof working [on] the residence. There was another individual

4

there whose name is Josh Tucker. The CI communicated indirectly with Mr. Gillespie, indicated that he was there to purchase the two grams of meth that he had agreed on. And Mr. Tucker and Mr. Gillespie communicated with each other. Ultimately, Mr. Gillespie giving Tucker the go-ahead. Tucker instructed the CI where the meth was at, left the money and collected the meth and left shortly thereafter where myself and Sergeant King had met him. We collected the meth, did our post-buy search interview, logged the meth into evidence. Prior to logging it into evidence, we photographed and did our test of it.

District Attorney: All right. So let me just make sure I got all this clear. Mr. Gillespie reaches out to the CI saying, hey, I can sell him some meth, right?

Officer Major: Correct.

District Attorney: You guys set up a controlled buy. Our CI goes to the location. Mr. Gillespie is up on a roof working, so there's communication between the CI and Mr. Gillespie on the roof, at which point he then talks to Mr. Tucker. So there's more conversation there. Sounds like Mr. Gillespie gave Mr. Tucker the thumb's up. Mr. Tucker then instructed the CI where to get the meth and where to drop off the cash. Is that all right?

Officer Major: Yes.

District Attorney: All right, and you did a field test of the substance that was received by the CI. And that was a positive result?

Officer Major: Yes.

District Attorney: What was that a positive result for?

Officer Major: Methamphetamine.

District Attorney: And what was the approximate weight of that methamphetamine that you received?

5

Officer Major: When we weighed it, it was approximately 1.1. grams.

District Attorney: 1.1 grams. Has that substance been sent to the crime lab for testing?

Officer Major: It has.

District Attorney: And do you have a lab report back on that?

Officer Major: [No.][2]

19) Contrary to Officer's Major's statements, however, no such communication occurred between Mr. Tucker and Mr. Gillespie at the time of the buy. Nor did Mr. Tucker facilitate the sale in any way. Mr. Tucker's only purpose being there was to assist Mr. Gillespie with his carpenter/handyman work on the residence. This was the CI's understanding throughout the encounter, as well. When Mr. Tucker saw the CI arrive, Mr. Tucker assumed he was there to help on the painting project, asking the CI if he was there "to scrape off this [paint]," to which the CI replied, "yes." The entire conversation between Mr. Tucker and the CI is included on an audio recording disclosed during discovery and corroborates this version of the event.[3]

20) Officer Major also failed to inform the grand jury that the CI was acting as a paid informant and had a considerable criminal history,[4] including at least one felony conviction, himself.

21) On or about October 4, 2019, Officer Major prepared a charging affidavit to initiate the criminal case against Mr. Tucker and had the statement notarized. On information

---

[2] Lab test results were eventually returned and included in discovery for Mr. Gillespie's case, but not for Mr. Tucker's case.

[3] This recording was also not included in discovery for Mr. Tucker's case. Mr. Tucker and his attorney at the time only learned of it after filing a public records request to obtain discovery for Mr. Gillespie's case. They also learned of a no-contact order in Mr. Gillespie's case ordering Mr. Gillespie not to have contact with Mr. Tucker. No such order was issued in Mr. Tucker's case.

[4] As of the date of the grand jury proceeding, at least eight criminal convictions.

and belief, the decision to charge Mr. Tucker was that of Officer Major and not the Alaska District Attorney's Office.

22) Officer Major was also the primary responsible officer in preparing the incident reports and discovery for the case (#19-4883 and #19-2399). Among other statements, he wrote:

> On 6/5/19, Josh Tucker participated in the sale, transfer, and distribution of methamphetamine by completing the transaction between [the CI and Mr. Gillespie]. . . . At 1939 hours, Sgt. King, [the CI] and I met at our pre-arranged location where [the CI] surrender (sic) a small plastic bindle of meth. Sgt. King and I conducted a post-buy search and interview. [The CI] stated that he/she approached the location and Gillespie was on top of the roof working, and Josh Tucker was on the ground. [The CI] confirmed the sale with Gillespie by holding up two fingers indicating that he wanted the agreed up two grams of meth. [The CI] stated that Gillespie gave him a 'thumbs up' sign. *[The CI] was told by Tucker that his meth was on the tool box under the roof where Gillespie was working.*[5] [The CI] found the meth and left the money issued to him/her.

23) Mr. Tucker was arrested by Valdez Police Officer Chad Clements on an arrest warrant on October 4, 2019, at which time his pickup truck was also seized and towed to an open bay (#3) at the Valdez Police Department. On information and belief, the application for the warrant and supporting affidavit were also prepared by Officer Major and contained the same untrue allegations detailed above. He was arraigned the next day on October 5, 2019 and released on a $10,000.00 unsecured bond.

24) On October 7, 2019, Officer Major and Valdez Police Lieutenant Mott applied for and were granted a search warrant (3VA-19-39SW) for Mr. Tucker's pickup truck. The affidavit in support of the warrant was sworn to by both officers and also contained the untrue statement that Mr. Tucker had participated in the meth sale: "On 6/5/19 at 1939 hours, the VPD purchased methamphetamine from Robert Gillespie

---

[5] Italics added.

7

Case 3:22-cv-00065-JMK   Document 1   Filed 03/31/22   Page 7 of 16

and Joshua Tucker." Officer Major also falsely stated in the affidavit that Mr. Tucker had a glass pipe which was consistent with a pipe used for smoking meth.[6]

25) Mr. Tucker was served with the search warrant on October 9, 2019 and offered his key to expedite the search. They used Mr. Tucker's key to open the vehicle and photographed their search, but found nothing of evidentiary value in the vehicle. The vehicle was returned to Mr. Tucker after the search.[7]

26) On April 14, 2020 Mr. Tucker's attorney Rex Butler filed a Motion to Dismiss Indictment Based on Uncorroborated and Untrustworthy Hearsay. In sum, he argued there was a "Complete lack of evidence by which the grand jury could assess the trustworthiness of the hearsay evidence [of the CI as attested to by Officer Major]. The grand jury was not presented with any evidence which would demonstrate the reliability of the [CI's statements attested to by Officer Major] or independently corroborate his allegation."

27) On June 2, 2020, the court granted the motion to dismiss on the grounds that insufficient reliable evidence had been produced to even support a probable cause finding to allow the case to proceed. And on June 8, 2020, the Palmer District Attorney's Office filed a Crim. R. 43(c) dismissal of the case "in furtherance of justice."

28) Among the items seized when Mr. Tucker was arrested was his Galaxy Note9 512G cell phone which he had purchased for $1,249.99. The seizure of the phone was documented in the discovery for the case. No inventory of the phone, however, was

---

[6] Valdez Police Officer Chad Clements and Alaska State Trooper Andrew Ballesteros also filed supporting affidavits for the search warrant, but nowhere in their affidavits was the glass pipe mentioned.

[7] Photographs were taken by the police to document the vehicle search; however, none were included in discovery or evidence for Mr. Tucker's case. Mr. Tucker only obtained these photos after making a public records request for discovery in Mr. Gillespie's case.

8

ever provided. Nor was the phone included on the search warrant. To this day, and despite numerous requests by Mr. Tucker, the Valdez Police Department has not returned the phone nor assisted in any way with its recovery. It is not known where the phone currently remains. On information and belief, the Valdez Police Department conducted a search of the phone at some point. Mr. Tucker used an "app" and determined the location of his phone remotely at the Valdez Police Department on November 21, 2019 at 7:40 a.m. and again at 1:50 p.m. that same day. On the latter instance, "Google Assistant" app captured a voice saying, "Where did you take this . . .. Wouldn't you . . ."? This search was unlawful, as the phone was not included as an item permitted to be searched by the warrant.

29) Another important factor in this case, particularly insofar as it tends to show actual malice by Officer Major and the other Individual Defendants, is that Mr. Tucker happens to be a black man. Included in the community-wide investigation in which Mr. Tucker was wrongfully included were a number of other persons who were eventually charged with similar offenses. On information and belief, none of these individuals were of African descent. In contrast to Mr. Tucker's case, which essentially hinged on and was eventually unhinged on false statements made by a police officer under oath, these other cases were by comparison were based on well-developed and thorough investigations that resulted in material and legally admissible evidence. Unfortunately, this was not the first time Mr. Tucker had been wrongfully targeted by the Valdez Police Department at least in part due to his race and the misconceived threat he and others like him pose to the community. This targeting manifests itself not only in such patent, blatant and covert instances like those

detailed in this Complaint, but in the more subtle, passive and covert suspicious and disdainful glances and palpable feelings of mistrust from members of the Valdez Police Department that cloud the air of nearly every interaction between them and Mr. Tucker.

## Count I: Malicious Prosecution, Wrongful Arrest and False Imprisonment Under 42 U.S.C. § 1983 And Alaska Common Law Against Officer Major

30) Mr. Tucker realleges and incorporates all allegations above as if they were fully set forth herein.

31) Officer Major, in his individual capacity, and acting with actual malice, took material steps to initiate and continue the prosecution of Mr. Tucker based on falsified testimony and other evidence and knowing the charges had no probable cause.

32) Any probable cause found by the grand jury or any court in this matter was based on the false testimony and falsified evidence presented and attested to by Officer Major.

33) In furtherance of the malicious prosecution, wrongful arrest and false imprisonment, Officer Major suppressed exculpatory evidence, fabricated evidence, fabricated and pressured inculpatory witness statements, failed to conduct and adequate investigation of the crime, and/or covered up impeaching evidence of his own crime.

34) Officer Major's acts to deprive Mr. Tucker of his liberty without probable cause was in violation of clearly established constitutional rights under the Fourth, Fifth and/or Fourteenth Amendments, and constitute the torts of malicious prosecution, wrongful arrest and false imprisonment under Alaska common law, and no reasonable law enforcement officer at that time or after would have believed that these actions were lawful.

10

35) Mr. Tucker maintained his innocence throughout the case. The court granted Mr. Tucker's Motion to Dismiss due to the lack of competent and reliable evidence against him, and this was confirmed by the District Attorney's A.R.C.P. Rule 43(c) dismissal in furtherance of justice.

36) Officer Major's actions directly and proximately caused Mr. Tucker's arrest, imprisonment, indictment, and restriction of his liberties after he was released on bail conditions while the case was pending.

37) Officer Major is not entitled to a qualified immunity governmental defense for the Alaska torts of malicious prosecution, wrongful arrest or false imprisonment.

Count II: Claim for Supervisory Liability Against Named and Unnamed Supervisors Under 42 U.S.C. § 1983

38) Mr. Tucker realleges and incorporates all allegations above as if they were fully set forth herein.

39) The Supervisory Defendants were at all relevant times supervisory personnel with or acting for the Valdez Police Department with oversight responsibility for, and personal involvement in, the training, screening, instruction, supervision, and discipline of individual law enforcement, including but not limited to Officer Major. Their failure to train and/or supervise Officer Major and others directly led to the violation of Mr. Tucker's rights.

40) The Supervisory Defendants knew or should have known that their subordinate officers and/or investigators were maliciously prosecuting civilians, fabricating evidence, fabricating and pressuring inculpatory witness statements, suppressing and destroying exculpatory evidence, and depriving civilians of due process of law, and

11

authorized, approved, encouraged, and/or directly participated in all of these unconstitutional practices.

41) The Supervisory Defendants knew or should have known that in a continuation of Officer Major's known pattern of misconduct, Officer Major had deprived Mr. Tucker of his clearly established constitutional rights through misconduct that included, but was not limited to, coercing witness statements and fabricating evidence, destroying evidence, concealing material exculpatory and impeachment evidence, and violating their ongoing affirmative obligation to come forward with the truth of their own misconduct and evidence of Mr. Tucker's innocence, and yet authorized, approved, encouraged, or directly participated in these violations of Mr. Tucker's constitutional rights.

42) The Supervisory Defendants, by deliberately, recklessly, and with gross negligence failing to supervise their subordinate investigators or police officers and authorizing, approving, facilitating, or directly participating in their subordinates' misconduct, despite their subordinates' known pattern of such misconduct, caused their subordinates to deprive Mr. Tucker of his clearly established constitutional rights, including but limited to his rights not to be deprived of liberty without due process of law and his right to be free of unlawful prosecution, arrest and incarceration.

43) The deliberately indifferent, reckless, and grossly negligent conduct of the Supervisory Defendants violated their clearly established duty, in 2019 and after, to supervise subordinate officers such as Officer Major, and no reasonable police supervisor then or thereafter would have believed that deliberately indifferent, reckless, and grossly negligent supervision in the face of clear misconduct by their

subordinate officers, much less the Supervisory Defendants' ratification of and personal participation in such misconduct, was lawful.

44) The Supervisory Defendants' actions and omissions proximately and directly caused Mr. Tucker's arrest, imprisonment, malicious prosecution, and deprivation of liberty without due process of law during this period, as well as the ongoing injuries and damage to Mr. Tucker's reputation among friends, family and his community.

Count III: Negligent, Reckless and Intentional Infliction of Emotional Distress

45) Mr. Tucker realleges and incorporates all allegations above as if they were fully set forth herein.

46) The Defendants negligently, recklessly and/or intentionally directly caused Mr. Tucker to be falsely arrested, wrongfully incarcerated, and maliciously prosecuted.

47) The Defendants' actions caused Mr. Tucker to suffer severe emotional distress and damage to his reputation among his friends and family and in his community.

Count IV: Defamation of Character

48) Mr. Tucker realleges and incorporates all allegations above as if they were fully set forth herein.

49) By their grand jury testimony, affidavits and reports, the Individual Defendants published false information that claimed Mr. Tucker had assisted in a sale of illegal drugs in June of 2019. Mr. Tucker was referred to by name. These false statements are libelous on their face. They clearly exposed and continue to expose Mr. Tucker to hatred, contempt, ridicule and obloquy because they accuse Mr. Tucker of having committed a felony in his home community. The statements were viewed not only by

13

Case 3:22-cv-00065-JMK   Document 1   Filed 03/31/22   Page 13 of 16

officers of the court, grand jury and police community, but by family, friends and other members of Mr. Tucker's home community.

50) As a proximate result of the above-described publication, Mr. Tucker has suffered serious damage to his reputation, shame, mortification, and injury to his emotional health and feelings.

51) The above-described publication was not privileged because it was published by the Individual Defendants with actual malice.

## Count V: Replevin

52) Mr. Tucker realleges all statements above and fully incorporates these statements herein.

53) The Individual Defendants have wrongfully taken and retained Mr. Tucker's cell phone. The phone was never covered by a search warrant, and on information and belief, no material evidence was extracted from the phone, nor does any exist. Mr. Tucker's criminal case was dismissed almost two years ago, and any justification by the City for holding his phone has long passed. As a result, Mr. Tucker has suffered economic damages equal to or greater than the value of his phone. Moreover, the phone contains valuable personal photos, correspondence, contacts and other information that is difficult if not impossible to replace. Return of the phone to Mr. Tucker, therefore, is the only way to make him whole for this loss.

WHEREAS, Mr. Tucker prays for the following:

a) For trial by jury;

b) Compensatory damages for him and against the Defendants, jointly and severally, of at least $10,000,000.00;

14

c) Punitive damages against all Individual Defendants in an amount to be determined at trial that will deter such unlawful conduct in the future;

d) Pre-judgment and post-judgment interest, and recovery of his costs and reasonable attorney fees, pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims and costs pursuant to 42 U.S.C. § 1920; and

e) For any and all additional relief that may be fair and just under the circumstances.

Dated: _____

_____
Eric Auten (Alaska Bar #9712098)

## VERIFICATION

I, Joshua Tucker, being first sworn under oath, verify that I have read this Complaint and understand its contents and that to the best of my knowledge, all factual statements contained herein are true, and further that this Complaint and initiation of the above-captioned case is being brought according to my wishes and express request.

_____
Joshua Tucker

| State of Alaska | ) | |
|---|---|---|
| | ) ss: | |
| Third Judicial District at Valdez | ) | _____ |
| | | Notary Public, State of Alaska |

Case 3:22-cv-00065-JMK Document 1 Filed 03/31/22 Page 15 of 16

c) Punitive damages against all Individual Defendants in an amount to be determined at trial that will deter such unlawful conduct in the future;

d) Pre-judgment and post-judgment interest, and recovery of his costs and reasonable attorney fees, pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims and costs pursuant to 42 U.S.C. § 1920; and

e) For any and all additional relief that may be fair and just under the circumstances.

Dated: 2/18/22

_____
Eric Auten (Alaska Bar #9712098)

## VERIFICATION

I, Joshua Tucker, being first sworn under oath, verify that I have read this Complaint and understand its contents and that to the best of my knowledge, all factual statements contained herein are true, and further that this Complaint and initiation of the above-captioned case is being brought according to my wishes and express request.

_____
Joshua Tucker

State of Alaska )
) ss:
Third Judicial District at Valdez )

_____
Notary Public, State of Alaska
w/ office

On the 17th day of February, 2022 personally appeared before me

_____
proven to me to be the person(s) who signed the above document.

_____
Notary Public in and for Alaska
My Commission Expires w/ office

15