IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOSHUA TUCKER,

              Plaintiff,

    vs.

CITY OF VALDEZ, and BART
HINKLE and JAMESSON MAJOR, in
their individual capacities,

              Defendants.

Case No. 3:22-cv-00065-JMK

**ORDER GRANTING MOTION FOR
SUMMARY JUDGMENT**

At Docket 19, Defendants City of Valdez, Chief Bart Hinkle, and Officer Jamesson Major (collectively "Defendants") move for summary judgment. Plaintiff Joshua Tucker responded in opposition at Docket 25. Defendants replied at Docket 26. The Court took Defendants' motion under advisement without oral argument.

## I.   BACKGROUND

The following facts are undisputed unless otherwise noted.

**A.    Valdez Police Officers Purchase Narcotics Through a Confidential Informant**

On June 5, 2019, Officer Major and another officer, Sergeant King, used a paid, confidential information to purchase narcotics in Valdez, Alaska.[1] That day,

---

[1] Docket 19-4 at ¶¶ 9–16.

Officer Major and Sergeant King met with a confidential informant, who had been paid by the City of Valdez Police Department and with whom the Department had worked in the past.[2] The informant told the officers that an individual, Robert Gillispie, had offered to sell him methamphetamine and had instructed him to meet at a private residence that he was painting to complete the purchase.[3] The officers provided the informant with $200.00 to make the purchase and observed him as he approached the residence.[4] However, their view was obscured such that they could not view the transaction take place.[5] Additionally, the officers did not place a device on the informant's person to record the transaction.[6]

Following the purchase, the confidential informant recounted what had occurred to the officers as follows.[7] The informant told the officers that, when he approached the residence, Mr. Gillispie was on its roof.[8] The informant held up two fingers to indicate he wanted to purchase two grams of methamphetamine and, in response, Mr. Gillispie threw his phone off the roof.[9] The informant indicated that he retrieved the phone and handed it to Mr. Tucker, who was present at the jobsite.[10] The informant told the officers that, in response, Mr. Tucker, without specifically referring to drugs, told the informant where to find the narcotics by directing him to a toolbox nearby.[11] The informant

---

[2] *Id.* at ¶¶ 6, 10.
[3] *Id.* at ¶ 10.
[4] *Id.* at ¶¶ 11–12.
[5] *Id.* at ¶ 12.
[6] *Id.* at ¶ 11.
[7] *Id.* at ¶ 14.
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*

*Tucker v. City of Valdez, et al.*                                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                                            Page 2
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 2 of 23

found a substance in the toolbox, which field-tested positive for methamphetamine, and left $200.00 as payment.[12]

The informant also told the officers that Mr. Tucker had asked him whether he was at the jobsite to help scrape paint off the house.[13]  However, the officers disregarded Mr. Tucker's statement as they believed he made it to create a plausible explanation for his directing the informant to the toolbox, where narcotics had been stashed.[14]  Furthermore, the pattern of events that the informant told officers occurred—including employing multiple individuals to facilitate the purchase and stashing of drugs nearby—is consistent with common tactics the officers understood narcotics dealers use to create deniability.[15]

Mr. Tucker disputes that he facilitated the transaction, averring that he did not communicate with Mr. Gillispie at the time of the buy, that he was only at the residence to assist with painting, and that, when he asked the informant whether he was there to help with the painting project, he did so genuinely, and not as a means of directing him to the location of the drugs.[16]

## B.  Police Arrest Mr. Tucker, Seize Personal Property, and Search His Vehicle

After the informant completed this purchase, the Valdez Police Department provided information to statewide narcotics prosecutors, who indicated that they intended to indict Mr. Gillispie and Mr. Tucker.[17]  In October 2019, Officer Majors sought an arrest

---

[12] *Id.* at ¶ 16.
[13] *Id.* at ¶ 15.
[14] *Id.* at ¶¶ 15–16.
[15] *Id.* at ¶ 14.
[16] Docket 1 at ¶ 19.
[17] Docket 19-4 at ¶ 19.

*Tucker v. City of Valdez, et al.*                                        Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                        Page 3
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 3 of 23

warrant for Mr. Tucker, as the Valez Police Department indicated they planned to make several similar arrests at that time and wished to coordinate with the Alaska State Troopers for the use of a canine unit.[18]  In his affidavit supporting the arrest warrant application, Officer Major averred that "[Mr.] Tucker had a direct part in the transaction by communicating in person with [Mr.] Gillispie and telling [the informant] in person where [he] could retrieve the meth and leave the $200 in cash."[19]  A magistrate judge issued an arrest warrant for Mr. Tucker on October 4, 2019.[20]

On October 4, 2019, Officer Clements of the Valdez Police Department and two Alaska State Troopers arrested Mr. Tucker.[21]  During the arrest, a canine unit alerted the officers to the potential presence of narcotics in Mr. Tucker's vehicle.[22] Officer Clements arranged to have the vehicle impounded pending a search warrant.[23] Additionally, during the arrest, Mr. Tucker was holding an item the officers believed to be a pipe or e-cigarette, which they did not seize or confiscate.[24]  However, the officers did seize Mr. Tucker's cell phone.[25]  Officer Clements avers that he never searched Mr. Tucker's cell phone, that, to his knowledge, the phone was sealed in a faraday bag, and that the phone was mis-logged at the Valdez Police Department.[26]  Mr. Tucker retrieved

---

[18] *Id.* at ¶ 21; Docket 19-13 (warrant).
[19] Docket 19-13 at 3.
[20] *Id.* at 1.
[21] Docket 19-3 at ¶ 2.
[22] *Id.* at ¶ 7.
[23] *Id.*
[24] *Id.* at ¶ 6; *see also* Docket 19-5 at ¶ 4.
[25] Docket 19-3 at ¶ 8.
[26] *Id.*

the phone, a Galaxy Note9 512g, in March 2023, but reports that it has been damaged.[27] He also asserts that data on the phone's SD card indicates that the phone was accessed several times on October 14, 2019.[28]

Officer Major later applied for a warrant to search Mr. Tucker's vehicle, which a judge granted on October 7, 2019.[29] The application for the search warrant included an affidavit from Officer Major, in which he represented that Mr. Tucker had participated in the meth sale.[30] On October 9, 2019, Officer Major duly searched the vehicle with Mr. Tucker's assistance.[31] No evidence of narcotics was discovered in the vehicle.[32]

On October 5, 2019, one day after Mr. Tucker was arrested, he posted bond and was released.[33]

## C. Prosecutors Charge Mr. Tucker but the Superior Court Later Dismisses the Indictment

In early October 2019, prosecutors charged Mr. Tucker with one count of misconduct involving a controlled substance in the third degree.[34] Prosecutors presented evidence related to the case to a grand jury on October 10, 2019.[35] During grand jury proceedings, prosecutors elicited testimony from Officer Major, who was the sole witness

---

[27] Docket 25-1 at ¶¶ 5–6.
[28] *Id.* at ¶ 6.
[29] Docket 19-7 (SEALED).
[30] *Id.* at 2–5.
[31] Docket 19-4 at ¶ 27; Docket 1 at ¶ 25.
[32] Docket 19-4 at ¶ 27.
[33] Docket 19-15.
[34] Docket 1 at ¶ 15.
[35] Docket 19-12.

to testify.[36]   Officer Major testified that he and others arranged with the confidential informant to purchase narcotics and then relayed the informant's account of the purchase to the grand jury.[37]   Mr. Tucker maintains that he never communicated with Mr. Gillispie during the purchase and did not facilitate the exchange.[38]   Ultimately, the grand jury returned a true bill and Mr. Tucker was indicted.[39]

On April 14, 2020, Mr. Tucker and Mr. Gillispie jointly filed a motion to dismiss the indictments against them, arguing the prosecutor failed to corroborate the informant's hearsay statements presented to the grand jury through Office Major's testimony.[40]   The Superior Court ordered dismissal.[41]

After the indictment against him was dismissed, Mr. Tucker filed this action for damages under 42 U.S.C. § 1983.[42]   In a verified complaint, he asserts claims of malicious prosecution, wrongful arrest, false imprisonment, negligent infliction of emotional distress, intentional infliction of emotional distress, and defamation.[43] Furthermore, he alleges individuals bear supervisory liability and seeks replevin of his cell phone.[44]

---

[36] *Id.*
[37] *Id.*
[38] Docket 1 at ¶ 19; Docket 25-1 at ¶¶ 2–4.
[39] Docket 19-14.
[40] Docket 19-8.
[41] Docket 19-11.
[42] Docket 1.
[43] *Id.*
[44] *Id.*

## II.   LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[45]   A material fact is one that "might affect the outcome of the suit under the governing law."[46]   "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[47]

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.[48]   To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[49]

Once the movant has made such a showing, the non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'"[50]   The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[51]   A party cannot "defeat

---

[45]   Fed. R. Civ. P. 56(a).

[46]   *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[47]   *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1031 (9th Cir. 2010).

[48]   *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[49]   Fed. R. Civ. P. 56(c)(1).

[50]   *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

[51]   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty Lobby*, 477 U.S. at 252; *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence").

summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."[52] However, insofar as it is "based on personal knowledge and set[s] forth specific facts admissible in evidence[,]" a verified complaint "may be used as an opposing affidavit under Rule 56."[53]

"If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."[54] Ultimately, in ruling on a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.[55]

## III. DISCUSSION

Mr. Tucker asserts claims of malicious prosecution, wrongful arrest, and false imprisonment under § 1983 and Alaska common law against Officer Major,[56] claims that Chef Hinkle and other officers in the Valdez Police Department bear supervisory liability,[57] claims of negligent and intentional infliction of emotional distress against all

---

[52] *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003).
[53] *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995).
[54] *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).
[55] *Scott v. Harris*, 550 U.S. 372, 378 (2007).
[56] Docket 1 at ¶¶ 30–37; *see also Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004) ("Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed.").
[57] Docket 1 at ¶¶ 38–44.

*Tucker v. City of Valdez, et al.*                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                             Page 8
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 8 of 23

defendants,[58] a claim of defamation against Officer Major,[59] and seeks replevin of his cell phone.[60]

Defendants argue that summary judgment is warranted and Mr. Tucker's federal constitutional claims against Officer Major and Chief Hinkle must be dismissed as the two officers are entitled to qualified immunity.[61] They also assert that they are otherwise immune from suit,[62] that Mr. Tucker has failed to establish supervisory liability,[63] that Mr. Tucker's common law tort claims are also precluded by qualified immunity,[64] and that his replevin claim is moot.[65]

In response, Mr. Tucker argues that his claim under *Devereaux v. Abbey*[66] is meritorious,[67] that there is supervisory liability because the Defendants' acts show deliberate indifference to his rights,[68] and that the Defendants' conduct impacted his standing in the small community of Valdez.[69] He does not appear to make an argument to regarding the threshold questions of immunity.

---

[58] *Id.* at ¶¶ 45–47.
[59] *Id.* at ¶¶ 48–51.
[60] *Id.* at ¶¶ 52–53.
[61] Docket 19-1 at 10–12.
[62] *Id.* at 15.
[63] *Id.* at 16–18.
[64] *Id.* at 18.
[65] *Id.* at 19.
[66] 263 F.3d 1070 (9th Cir. 2001) (en banc).
[67] Docket 25 at 9–11.
[68] *Id.* at 11.
[69] *Id.* at 11–12.

**A. Qualified Immunity Requires the Dismissal of Mr. Tucker's § 1983 Claims**

Defendants claim that Mr. Tucker's federal claims against them are precluded because Officer Major and Chief Hinkle are entitled to qualified immunity.[70] Mr. Tucker does not directly address whether qualified immunity applies.

Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[71] "To determine whether an officer is entitled to qualified immunity, a court must evaluate two independent questions: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident."[72] Qualified immunity applies unless both prongs of the inquiry are satisfied.[73] A court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first."[74] However, it "is often beneficial" to analyze the first prong first and the second prong second because this sequence "promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable."[75]

---

[70] Docket 19-1 at 10–12.
[71] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).
[72] *Castro v. County of Los Angeles*, 833 F.3d 1060, 1066 (9th Cir. 2016) (en banc) (citing *Pearson*, 555 U.S. at 232).
[73] *See Pearson*, 555 U.S. at 232.
[74] *Id.* at 236.
[75] *Id.*

*Tucker v. City of Valdez, et al.*                                          Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                  Page 10
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 10 of 23

As discussed below, Mr. Tucker's § 1983 claims for (1) malicious prosecution, (2) wrongful arrest, (3) false imprisonment, and (4) deliberate fabrication of evidence are barred by qualified immunity as Mr. Tucker has not satisfied the first prong of the qualified immunity analysis and shown that Officer Major's conduct violated his constitutional rights in these ways. It is therefore not necessary address whether these rights were clearly established.

**(1) Fourteenth Amendment malicious prosecution claim**

A claim for malicious prosecution is cognizable under § 1983 as a violation of the Fourteenth Amendment.[76] Although malicious prosecution suits typically are brought against prosecutors, they may also be brought "against other persons who have wrongfully caused the charges to be filed."[77] "In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right."[78]

Mr. Tucker has not produced facts that create a genuine dispute that Officer Major caused the charges against him to be filed "for the purpose of denying him

---

[76] *See, e.g., Lassiter v. City of Bremerton*, 556 F.3d 1049, 1054 (9th Cir. 2009); *see also Lovell v. Poway Unified Sch. Dist.*, 90 F.3d 367, 370 (9th Cir. 1996) (noting that, where a violation of state law is also a violation of a federal constitutional right, § 1983 may provide a cause of action).

[77] *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Although Defendants assume that Mr. Tucker's malicious prosecution claim is aimed at the prosecutor, Mr. Tucker does not name any prosecutor as a defendant and his allegations focus on Officer Major's actions.

[78] *Id.* (internal quotations and alterations omitted); *see also Bretz v. Kelman*, 773 F.2d 1026, 1031 (9th Cir. 1985) (noting malicious prosecution "is not a federal constitutional tort if process is available within the state judicial systems to remedy such wrongs").

*Tucker v. City of Valdez, et al.*                                        Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                               Page 11
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 11 of 23

equal protection or another specific constitutional right."[79]   At summary judgment, a plaintiff "must do more than simply allege that the defendants acted with an improper motive . . . ."[80]   They must "put forward specific, nonconclusory factual allegations that establish improper motive."[81]

Mr. Tucker alleges in his complaint that he was targeted for prosecution because he is a Black man.[82]  He asserts that he was the only Black man charged among a group of individuals charged with drug offenses in the same period, and also the only individual whose case "hinged on . . . false statements."[83]  Otherwise, he does not produce evidence that tends to show Officer Major acted with an improper motive.

Mr. Tucker's allegations do not suffice to establish a genuine issue of fact as to Officer Major's motive.  Mr. Tucker's contention that his case hinged on false statements is conclusory, as it assumes the truth of the disputed claim that he did not facilitate the sale of drugs.  Furthermore, without more, the allegation that he was the only Black man charged in several drug cases that prosecutors brought around the same time is not sufficient evidence that the officer causing him to be charged did so for the purpose of denying him equal protection.

Absent evidence that Officer Major had an improper motive, Mr. Tucker cannot establish that Officer Major violated his Fourteenth Amendment right by

---

[79] *Awabdy*, 368 F.3d at 1066 (internal quotations and alterations omitted).
[80] *Jeffers v. Gomez*, 267 F.3d 895, 907 (9th Cir. 2001).
[81] *Id.* (internal quotations and citations omitted).
[82] Docket 1 at ¶ 29.
[83] *Id.*

*Tucker v. City of Valdez, et al.*                                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                               Page 12
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 12 of 23

wrongfully causing him to be charged. Therefore, he cannot satisfy the first prong of the qualified immunity inquiry. Qualified immunity applies to this claim and precludes it.

> **(2)** **Fourth Amendment wrongful arrest claim**

A claim for wrongful or unlawful arrest under § 1983 is cognizable as a violation of the Fourth Amendment.[84] To prove a wrongful arrest claim under § 1983, a plaintiff "must show that the defendant['s] conduct deprived them of their Fourth Amendment right to be free from arrest unsupported by warrant or probable cause."[85]

Mr. Tucker does not allege, nor could he, that he was arrested without a warrant.[86] Instead, he appears to allege that his arrest violated his rights because the warrant was procured using false or fabricated evidence.[87]

Given that he was arrested pursuant to a warrant, Mr. Tucker fails to satisfy the first prong of the qualified immunity analysis with respect to his Fourth Amendment wrongful arrest claim—that Officer Major violated his rights. Accordingly, qualified immunity applies and bars his federal wrongful arrest claim. The Court analyzes below the claim that Mr. Tucker's arrest violated his rights because the arrest warrant was procured using deliberately false evidence, which is a Fourteenth Amendment claim.

---

[84] *Lacey v. Maricopa County,* 693 F.3d 896, 918 (9th Cir. 2012) (citation omitted).
[85] *Orozco v. County of Yolo*, 814 F. Supp. 885, 890–91 (E.D. Cal. 1993).
[86] *See* Docket 19-13 at 1 (warrant).
[87] *See* Docket 1 at ¶¶ 30–36.

*Tucker v. City of Valdez, et al.*                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                          Page 13
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 13 of 23

**(3)    Fourteenth Amendment false imprisonment claim**

A claim for false imprisonment as a result of a wrongful arrest is cognizable under § 1983 as a violation of the Fourteenth Amendment's Due Process Clause.[88]  To establish a constitutional violation, a plaintiff must meet the elements of the common law tort of false imprisonment and establish that the imprisonment violated their federal due process rights.[89]  Under Alaska law, false arrest and false imprisonment are one tort and require "(1) a restraint upon the plaintiff's freedom, (2) without proper legal authority."[90]  Here, Mr. Tucker was arrested and detained pursuant to a valid warrant.[91]  Therefore, he cannot establish that his Fourteenth Amendment right was violated through a false imprisonment.  Again, he fails to satisfy the first prong of the qualified immunity inquiry.  Qualified immunity thus applies and bars his false imprisonment claim under § 1983.

**(4)    Fourteenth Amendment deliberate fabrication of evidence claim**

Mr. Tucker does not explicitly plead a Fourteenth Amendment claim for deliberate fabrication of evidence in his Complaint.  However, he does mention a claim for deliberate fabrication of evidence under *Devereaux v. Abbey* in his Opposition to the Motion for Summary Judgment.[92]  The Court does not construe a represented plaintiff's complaint liberally.[93]  Nonetheless, even if the Court were to construe Mr. Tucker's

---

[88]  *See Baker v. McCollan*, 443 U.S. 137, 142 (1979).
[89]  *See, e.g., Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996); *accord Smith v. Bangs*, No. 2:22-CV-00426-BLW, 2023 WL 2244672, at *4 (D. Idaho Feb. 27, 2023).
[90]  *Waskey v. Municipality of Anchorage*, 909 P.2d 342, 345 (Alaska 1996).
[91]  Docket 1 at ¶ 23.
[92]  Docket 25 at 9–10.
[93]  *Cf. Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).

*Tucker v. City of Valdez, et al.*                                         Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                              Page 14
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 14 of 23

complaint liberally and find he pled a Fourteenth Amendment claim in this instance, qualified immunity would apply and bar it.

"[T]here is a clearly established constitutional due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government."[94]  This type of claim, a claim under *Devereaux* for deliberate fabrication of evidence, requires that the plaintiff identify evidence they contend the government deliberately fabricated and show that the fabrication was deliberate.[95]  Because direct evidence of intent often is lacking, the Ninth Circuit has recognized "two circumstantial methods of proving that the falsification was deliberate."[96]  A plaintiff facing summary judgment may support a claim for deliberate fabrication of evidence by "point[ing] to evidence that supports at least one of the following two propositions: (1) [d]efendants continued their investigation of [them] despite the fact that they knew or should have known that he was innocent; or (2) [d]efendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information."[97]

Mr. Tucker argues several inaccuracies in Officer Major's statements in affidavits and before the grand jury show there was a deliberate fabrication of evidence. *First*, he points out that Officer Major avers that his view of the actual transaction was obstructed, but, in his affidavit in support of the arrest warrant, he stated that he "observed

---

[94] *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001) (en banc).
[95] *Bradford v. Scherschligt*, 803 F.3d 382, 386 (9th Cir. 2015).
[96] *Id.*
[97] *Devereaux*, 263 F.3d at 1076.

*Tucker v. City of Valdez, et al.*                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                          Page 15
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 15 of 23

the purchase . . . ."[98]  *Second*, he underscores that Officer Major testified to the grand jury that he observed the informant approach the location to meet Mr. Gillispie, but did not clarify that he did not observe the transaction first-hand.[99]  And, *third*, Mr. Tucker argues that officers fabricated evidence because they failed to disclose in affidavits or to the grand jury that they had told the informant to avoid Mr. Tucker if he was at the jobsite with Mr. Gillispie.[100]

With respect to the first purported fabrication, Officer Major's statement that he "observed the purchase" when, in truth, he only observed the informant approach the agreed-upon location is not enough to show a deliberate fabrication of evidence. Defendants argue that "even if Mr. Tucker's complaint about the wording of the warrant constitutes a substantial showing that an officer deliberately fabricated evidence, the court should nevertheless grant summary judgment if the officer had probable cause with the fabrication omitted."[101]  The Court agrees as "fabricated evidence does not give rise to a claim if the plaintiff cannot show the fabrication actually injured [them] in some way."[102] If the arrest warrant was supported by probable cause without the officer's alleged fabrication, Mr. Tucker's injury cannot said be to have been caused by it.

Examining the evidence adduced in support of the arrest warrant, the Court finds Officer Major's statement that he observed the purchase was not crucial to probable

---

[98]  Docket 25 at 10; Docket 19-4 at ¶ 12; Docket 19-13 at 3.
[99]  Docket 25 at 10–11; Docket 19-12 at 9–10.
[100]  Docket 25 at 11; Docket 19-9.
[101]  Docket 26 at 3.
[102]  *Spencer v. Peters*, 857 F.3d 789, 798 (9th Cir. 2017) (internal citations and quotations omitted).

*Tucker v. City of Valdez, et al.*                                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                            Page 16
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 16 of 23

cause. That Officer Major observed the purchase was a minor detail in his affidavit which largely focused on information obtained from the confidential informant.[103] Probable cause existed regardless of this inaccuracy, so the alleged fabrication in the warrant does not suffice to show a Fourteenth Amendment violation.

With respect to the second purported fabrication, the Court cannot conclude that this statement was a deliberate fabrication of evidence. Mr. Tucker has not produced circumstantial or direct evidence that Officer Major's statement that he observed the informant approach the location to meet Mr. Gillispie was untrue. In fact, Officer Major's statement to the grand jury that he observed the informant approach the location where the sale was to occur is consistent with his affidavit in this case, the only evidence before the Court on the issue.[104]

Finally, with respect to the last alleged fabrication, the Court cannot conclude that Defendants' failure to disclose their instruction that the informant avoid Mr. Tucker was a fabrication of evidence. It is not apparent that the information Defendants allegedly failed to disclose was exculpatory here, but, even if that was the case, the *Devereaux* court was clear that "*Brady* violation cannot in itself support a deliberate-fabrication-of-evidence claim. . . ."[105]

---

[103] *See* Docket 19-13 at 3.
[104] *See* Docket 19-12 at 9–10.
[105] *Devereaux*, 263 F.3d at 1079.

Mr. Tucker has not established that Officer Major violated his Fourteenth Amendment right and thus fails at the first prong of the qualified immunity analysis. Qualified immunity bars this claim.

**B.      Qualified Immunity Also Bars Mr. Tucker's State Law Claims Against Individual Defendants**

Defendants argue that the state tort analogs to Mr. Tucker's federal constitutional claims as well as Mr. Tucker's tort claims are equally barred by qualified immunity.[106]  Mr. Tucker does not directly respond.

When this Court address Alaska state law claims based on supplemental jurisdiction, it applies Alaska's substantive law.[107]  Under Alaska law, "the doctrines of absolute and qualified immunity protect public officials from tort suits for discretionary acts committed within the scope of their authority."[108]  Alaska courts apply a "three-step inquiry . . . to determine the existence and scope of official immunity:  First, does the doctrine of official immunity apply to the state official's conduct?  Second, if it does apply, is the immunity absolute or qualified?  And third, if it is only a qualified immunity, did the state official act corruptly, maliciously, or in bad faith?"[109]

At the first step, courts ask whether official immunity applies.  "Official immunity applies to an official's conduct if (1) it is within the scope of the official's

---

[106]  Docket 19-1 at 18.
[107]  *See* *Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011).
[108]  *Smith v. Stafford*, 189 P.3d 1065, 1071 (Alaska 2008).
[109]  *Id.* at 1072 (internal citations and quotations omitted)

*Tucker v. City of Valdez, et al.*                                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                     Page 18
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 18 of 23

authority, and (2) it is a discretionary act."[110]  "An official acts within the scope of the official's authority when he or she has the authority to engage in the underlying conduct out of which the alleged claim arises."[111]  Discretionary acts are those requiring "personal deliberation, decision and judgment."[112]

There is no question that Officer Major's conduct here was within the scope of his authority as an officer with the Valdez Police Department and discretionary. Mr. Tucker's malicious prosecution, wrongful arrest, false imprisonment, and negligent and intentional infliction of emotional distress claims all depend on the same core set of facts related to Officer Major's conduct: that he prepared affidavits and provided testimony before the grand jury.  Furthermore, Mr. Tucker's defamation claim is based on Officer Major's testimony before the grand jury.[113]  Officer Major's preparation of affidavits for warrants and provision of testimony undoubtedly are acts that he carries out as part of his duties as a police officer.  And they require personal judgment.  Personal judgment and deliberation are required for an officer to determine what kind of information is necessary to support an application for a warrant, how to respond to questions on examination, what level of detail should be included, and how to characterize events.

---

[110] *Id.* (internal citations and quotations omitted).
[111] *Id.* (citing *Aspen Exploration Corp. v. Sheffield*, 739 P.2d 150, 155 & n.11 (Alaska 1987)).
[112] *Aspen Exploration,* 739 P.2d at 155.
[113] Docket 1 at ¶¶ 48–51.

At the second step, the Court assesses whether the official is entitled to absolute or qualified immunity.[114] Here, Alaska precedent makes clear that a police officer is entitled to qualified, not absolute, immunity for discretionary acts.[115]

Finally, the Court must consider whether an official who has qualified immunity acted corruptly, maliciously, or in bad faith?"[116] Qualified immunity precludes liability for tortious acts that "are done in good faith and are not malicious or corrupt."[117] "Where qualified immunity is raised by the moving party as grounds for summary judgment, the nonmoving party, in order to avoid summary judgment, must present some admissible evidence that creates an issue of fact as to whether the official acted in bad faith or with an evil motive."[118]

As discussed above, Mr. Tucker has not produced evidence that creates an issue of fact as to whether Officer Major, or anyone else, acted in bad faith or with an improper motive in causing him to be charged. Additionally, he has produced no other evidence indicating any of the Defendants acted with an improper motive with respect to any of the other conduct alleged.

Therefore, under Alaska law, qualified immunity applies and bars the assertion of state tort law claims against individual defendants in this case. Mr. Tucker's malicious prosecution, wrongful arrest, false imprisonment, negligent and intentional

---

[114] *Smith*, 189 P.3d at 1072.
[115] *See Prentzel v. State, Dept. of Public Safety*, 53 P.3d 587, 591 (Alaska 2002).
[116] *Smith*, 189 P.3d at 1072 (internal citations and quotations omitted).
[117] *Aspen Exploration,* 739 P.2d at 158.
[118] *Smith*, 189 P.3d at 1074.

infliction of emotional distress, and defamation claims against Officer Major and any other individuals must be **DISMISSED**.

### C.    Mr. Tucker's Supervisory Liability Claims Fail

Mr. Tucker asserts claims against "named and unnamed supervisors" under § 1983 for the alleged deprivations of his rights discussed above.[119]  Defendants argue that these claims fail as a matter of law because Mr. Tucker cannot establish a constitutional violation and, in any event, Mr. Tucker has not shown the requisite connection between any deprivation of rights and a supervisor's conduct.[120]  A supervisor may be liable in his or her individual capacity under § 1983 only if (1) he or she personally participated in the constitutional violation, or (2) there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."[121]  As discussed above, Mr. Tucker has not produced sufficient evidence to show Officer Major or City of Valdez Police officers committed a constitutional violation.  Absent a constitutional violation, a claim for supervisory liability fails.

Furthermore, although the City of Valdez is a named defendant in this case, the Court cannot discern any claim in the complaint that is directed at the City.  Insofar as Mr. Tucker intended to allege that the city bears supervisory liability, that claim would fail. "[A] municipality cannot be held liable under §1983 on a respondeat superior theory."[122]

---

[119]  Docket 1 at ¶¶ 38–44.
[120]  Docket 19-1 at 16–17.
[121]  *Hansen v. Black*, 885 F.2d 642, 645–46 (9th Cir. 1989).
[122]  *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978).

*Tucker v. City of Valdez, et al.*                                          Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                        Page 21
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 21 of 23

**D.  The Court Declines to Exercise Supplemental Jurisdiction over Mr. Tucker's Replevin Claim**

Finally, Defendants argue that Mr. Tucker's replevin claim is moot.[123] Mr. Tucker does not directly address this argument, but includes new facts in his opposition, which indicate he retrieved his phone from the Department, found it damaged, and believes it was searched.[124]  In response to this new information, Defendants reply that the phone was lawfully seized, the damage to the phone is not a federal issue, and the Court should decline to exercise supplemental jurisdiction over the state law claim.[125]

Under Alaska law, replevin is "an action brought to recover goods unlawfully taken."[126]  "Thus, the normal remedy is the return of the goods."[127]  "Damages are also allowed for the value of the use of the goods during the period of detention."[128]

Because Mr. Tucker has retrieved his phone, relief in his replevin claim is limited to damages for the value of the phone between October 2019 and March 2023. Additionally, although it is not stated here, Mr. Tucker may have a cognizable tort claim for the damage to his phone.

A district court "may decline to exercise supplemental jurisdiction over a claim . . . if [it] has dismissed all claims over which it had original jurisdiction."[129]

---

[123]  Docket 19-1 at 19.
[124]  Docket 25 at 6–7.  Mr. Tucker has not sought to amend his complaint to assert any claim related to what he suggests in his motion are warrantless searches of his phone.
[125]  Docket 26 at 9.
[126]  *Rollins v. Leibold*, 512 P.2d 937, 944 (Alaska 1973).
[127]  *Id.*
[128]  *Id.*
[129]  28 U.S.C. § 1367(c)(3).

*Tucker v. City of Valdez, et al.*                                        Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                                          Page 22
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 22 of 23

Additionally, a court's decision to decline to exercise supplemental jurisdiction is informed by the "values of economy, convenience, fairness, and comity."[130]

The Court now has dismissed the claims for which it had federal question jurisdiction, leaving only Mr. Tucker's replevin claim. Considerations of judicial economy, fairness, and comity do not counsel that this Court should retain jurisdiction over Mr. Tucker's final, narrow claim. This Court has not made previous rulings in this case. Moreover, a state court is better placed to analyze Mr. Tucker's state tort claim. Accordingly, this Court declines to exercise supplemental jurisdiction over Mr. Tucker's replevin claim. The claim is **DISMISSED**.

## IV. CONCLUSION

As discussed, Mr. Tucker's claims of malicious prosecution, wrongful arrest, false imprisonment, negligent and intentional infliction of emotional distress, and defamation claims are barred by qualified immunity and are **DISMISSED**. His claim asserting supervisory liability fails as a matter of law and is **DISMISSED**. Finally, the Court declines to exercise supplemental jurisdiction over Mr. Tucker's replevin claim. Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk of Court is directed to enter final judgment and close the case.

IT IS SO ORDERED this 18th day of October, 2023, at Anchorage, Alaska.


_____
        */s/ Joshua M. Kindred*
        JOSHUA M. KINDRED
        United States District Judge

---

[130] *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir.), *as amended* (Oct. 1, 1997) (internal quotations omitted).

*Tucker v. City of Valdez, et al.*                                    Case No. 3:22-cv-00065-JMK
Order Granting Motion for Summary Judgment                            Page 23
Case 3:22-cv-00065-JMK   Document 30   Filed 10/18/23   Page 23 of 23